### PEOPLE v. GARNER.

CRIMINAL LAW—JURORS—EXCUSING FOR CAUSE—READING NEWSPAPER REPORTS.

> The refusal of the trial court, on the second trial of defendant charged with statutory rape, to excuse for cause certain jurors who had read newspaper reports of the former trial and discussed same with neighbors and friends, thus forming an opinion of defendant's guilt which they admitted would require some evidence to remove, but which they stated, in answer to interrogatories by the court, would not prevent them from giving defendant the presumption of innocence and deciding the case according to the law and evidence given in open court, is affirmed, on error, by a divided court.

Error to Oakland; Rockwell (Kleber P.), J. Submitted April 19, 1921. (Docket No. 130.) Decided October 13, 1921. Rehearing denied February 8, 1922.

Robert Garner was convicted of an assault with in-

---

On opinion gained from newspaper as disqualification of juror in criminal case, see note in 35 L. R. A. (N. S.) 985.

tent to commit the crime of rape, and sentenced to imprisonment for not less than 2½ nor more than 10 years in the State prison at Jackson. Affirmed by a divided court.

*Charles S. Matthews* and *Pelton & McGee,* for appellant.

*A. Floyd Blakeslee,* Prosecuting Attorney, and *Glenn C. Gillespie,* Special Prosecuting Attorney, for the people.

SHARPE, J. On the first trial of this case, defendant was convicted of the crime of rape on a female under the age of 16 years. A reversal was had in this court and a new trial ordered. *People* v. *Garner,* 211 Mich. 44. A new trial has been had and the defendant found guilty of assault with the intent to commit the crime of rape. The case is again before us for review on writ of error.

The assignments are grouped in the discussion of counsel under the following headings:

1. Errors in the selection of the jury.
2. Denial of the motion for a change of venue.
3. Errors in the admission and rejection of testimony.

1. The proceedings incident to obtaining a jury occupy more than 300 pages of the printed record. Defendant's counsel exercised all their peremptory challenges. It is insisted that 6 jurors who sat upon the panel should have been excused on defendant's challenge for cause and that the challenge to several others, who were afterwards excused peremptorily by the defendant, should have been sustained. In order to determine the competency of a juror, it is necessary to consider all the questions put to and answered by him. We do not determine the weight to be given

to the testimony of a witness from detached questions and answers.   We cannot within the limits of an opinion set forth the examination of all these jurors, but we quote substantially in full that of the first two of them to which reference is made in defendant's brief and which are, we think, fairly illustrative of them all.   Among the six was Fred Skinner. He was called while one of defendant's counsel was examining the jury, and in answer to questions put by him said:

"*Q.* Now, based on what you have heard of the case, did you form any opinion as to the guilt or innocence of this respondent?

"*A.* Yes, I might say that I have.

"*Q.* Such an opinion as would require evidence to remove?

"*A.* It would depend on whether I heard any evidence to convict him.

"*Q.* Well, take it now, as the case stands, I think you said at the time you heard it talked of, you formed an opinion as to the guilt or innocence of this respondent?

"*A.* Yes, sir.

"*Mr. Lynch:* Your answer was yes?

"*A.* Yes, sir.

"*Q.* Have you that same opinion now?

"*A.* Yes, sir.

"*Q.* Is that such an opinion as would require some evidence to be offered to change it?

"*A.* It would.

"*Q.* Now in the talk that you heard at the time of the trial, you knew the parties who were talking about it?

"*A.* Yes, sir.   It was talked of quite freely in my neighborhood and opinions were rather freely expressed as to the guilt or innocence of the respondent.

"*Q.* Do you know or did you learn the source of the information of the parties who were talking, doing the talking?

"*A.* Well, they just read it from the newspapers; they read it from the newspapers and were at the trial.

"*Q.* Did you know that part of the testimony was reported from day to day in the Press-Gazette?

"*A.* I didn't take the paper.

"*Q.* No, but from the talk that you heard in your neighborhood?

"*A.* Yes, sir.

"*Q.* And as you sit here in court approaching the trial of this case, you have in mind that opinion that you formed when you heard the case talked of at the former trial?

"*A.* Yes, sir.

"*Q.* Your answer is yes, sir?

"*A.* Yes, sir.

"*Q.* And it would be necessary for some one to offer some evidence to change or modify that opinion, would it not?

"*A.* I would want to hear something to convince me before—

"*Q.* Whatever that opinion is that you have it would require some proof to be offered one way or the other to change it, would it not?

"*A.* Well, I might say yes.

"*Q.* Yes?

"*A.* Yes.

"*Mr. McGee:* Now I challenge this juror for cause.

"*The Court:* Is your opinion of such a fixed character that you cannot give Mr. Garner the benefit of the presumption of innocence and render a verdict based on the law and the evidence as you hear it in open court?

"*A.* I would not want to say it was as firm as that.

"*Q.* In other words, would you look upon him as being innocent and not be influenced by anything you may have heard in the past?

"*A.* Yes, sir."

After several other jurors had been examined, Mr. Skinner was interrogated by the prosecuting attorney as follows:

"I live in Highland township and am not acquainted with Robert Garner and do not know any of his friends or relatives.

"*Q.* Now in answer to Mr. McGee's question I think you said you read something about the case?

"*A.* I don't recall reading it; I don't recall reading anything in regard to the trial, only a notice of the trial. I heard the case discussed at the time of the former trial.

"*Q.* Have you any personal knowledge of the facts of the case?

"*A.* No, sir. I never talked with any one who claimed to have personal knowledge of the facts. So the opinion or impression that I formed are based on what I heard and read and heard discussed and those discussions grew out of the newspaper reports of the trial. I think I could lay aside the opinion that I have and decide this case solely upon the evidence given in open court without reference to my previously formed opinion and without reference to anything I heard or read in the past. The opinion I have would not prevent me from giving the respondent the benefit of a presumption of innocence in his favor through the course of the trial. I feel I could sit here and render a fair and impartial verdict based solely upon the law and the evidence regardless of what I may have read about the case in the past. I know of no reason why I could not serve as a juror and render a fair and impartial verdict based on the law and the evidence. I think I could start upon the trial with the presumption that the respondent is innocent in my mind and retain it until removed from my mind by the evidence offered here in open court."

Some time later he was further examined by the prosecuting attorney as follows:

"*Q.* In answer to our question last week, I think you said you had some sort of an opinion. Is that correct?

"*A.* Yes, sir.

"*Q.* Is that opinion of a definite nature?

"*A.* No, sir.

"*Q.* Is it sufficient so that it amounts to a settled conviction?

"*A.* No, sir. I do not recall reading anything about the case and have not heard anything about it since the former trial other than that the case was called for trial again. I have no definite recollection

of the facts upon which my opinion of a year ago was based. .

"*Q.* Is that opinion sufficiently fixed in character so that it would leave a bias in your mind that would preclude you from giving the defendant the presumption of innocence as the court has instructed you that surrounds the respondent throughout the trial?

"*A.* No, sir. I believe I could lay aside that impression and decide the case wholly upon the evidence given here in open court without any reference to any opinion that I had previously formed.

"*Q.* Is that impression which you formed sufficient so as to embarrass you or prevent you from giving this respondent the presumption of innocence in his favor throughout the trial?

"*A.* No, sir.

"*Q.* And do you feel that you could enter upon the trial of this case with your mind open, bearing in mind that under the law the respondent is presumed to be innocent of the crime until his guilt actually has been established beyond a reasonable doubt and render a fair and impartial verdict based solely upon the law and evidence?

"*A.* Yes, sir."

Later, he was questioned by the trial judge as follows:

· "*Q.* Do I understand from what you have read about the case that you have formed and expressed some opinion as to the merits of the case?

"*A.* I never read anything about it; I take the Pontiac paper but I do not recall reading it, possibly I might have noticed that he was on trial or something of that kind.

"*Q.* But if you have read anything about it you have forgotten it?

"*A.* Yes, sir.

"*Q.* Have you heard any comments about the case or any discussion at any time in the past, as far as you can recall that would influence you in any way in the trial of this case?

"*A.* No, sir. At this time I have no bias or prejudice or opinion whatever with reference to the matter. I don't think I have any opinion one way

or the other and I feel that I could enter upon the trial of the case and give the respondent the benefit of a presumption of innocence that the law allows that attends him during the entire trial."

Juror M. E. Stenton was first examined by one of defendant's counsel. He said he had read what appeared in the paper at the time of the arrest. He had heard it talked of at different times and had heard people express opinions as to the guilt or innocence of the defendant. He further said:

"*Q.* Did you take any part in the talk?

"*A.* In the arguments you mean or the conversation?

"*Q.* Yes.

"*A.* Oh, I have talked back and forth the same as the rest of them did.

"*Q.* From what you have heard of the case and from what you read about it, did you form any opinion as to the guilt or innocence of this respondent?

"*A.* Oh, I cannot say that I have any strong opinion.

"*Q.* Well, at the time you heard opinions expressed and heard the case talked about, at that time did you form any opinion as to guilt or innocence of the respondent?

"*A.* Well, I might say I did, I thought it was funny thing.

"*Q.* And was that such an opinion at that time that would require some evidence to remove?

"*A.* Why sure, I would have to have evidence to remove it.

"*Q.* Have you such an opinion now as would require evidence to remove?

"*A.* Well, I cannot say really. I would have to hear both sides. I am not biased in my mind; I could give a man a square deal I guess if tried before me.

"*Q.* Then at the outset of the case, having heard of it and formed an opinion, expressed an opinion, whether or not it would require some evidence to change the opinion that you have?

"*A.* You mean evidence to change my mind? I could listen to the evidence and if I thought it was right I would change my mind.

"*Q.* But it would require some evidence to do that?

"*A.* Yes, it would require some evidence to change it at the present time.

"*Q.* In other words, your opinion is definite?

"*A.* All set, yes.

"*Q.* And of a positive nature which would require some evidence to change it?

"*A.* Yes, sir.

"*Mr. McGee:* I challenge this juror for cause.

"*The Court:* Assuming that the court should advise you, which he will, that this man is presumed to be innocent and that it is not necessary for him to establish his innocence but it is necessary for the people to establish his guilt; in other words, you start in upon this trial with the presumption of his innocence, now, with those instructions the court will give you, provided you are permitted to sit as a juror in this case; now do you say at this time your opinion is of such a fixed character that you cannot give the respondent the benefit of a presumption of innocence and try the case wholly and solely upon the evidence that will be submitted to you in open court; could you not do that?

"*A.* I could do that, yes.

"*The Court:* I will overrule the motion.

"Exception.

"*The Court:* I will ask you another question.

"*The Court:* You would not feel that impression that you have at this time is of such a fixed character that you cannot look upon this respondent as being innocent?

"*A.* It could be changed, yes, my opinion could.

"*The Court:* I will overrule the challenge.

"*Mr. McGee:* It would require some evidence to change that opinion though, wouldn't it?

"*A.* Yes.

"*Q.* And as you look upon the respondent in this court, it would require some evidence to change the opinion you hold as to his guilt or innocence?

"*A.* Yes, sir.

"*Mr. McGee:* I now renew the challenge.

"*The Court:* Same ruling.

"Exception."

Later, when examined by the prosecuting attorney, he said:

"I have lived in Highland township six and a half years and formerly lived in Detroit. My family consists of a wife and six children.

"*Q.* Now in answer to Mr. McGee's question I think you said you had formed some sort of an opinion about the case?

"*A.* Well, I formed a slight opinion, yes.

"*Q.* Have you any personal knowledge of the facts in this case?

"*A.* No, sir.

"*Q.* You know nothing at all regarding what the facts are or what the testimony was at the former trial?

"*A.* No, sir. I have never talked with any one who claimed to have any personal knowledge of the facts. The impression or opinion that I had at one time was formed from hearing people talk about the case and reading about it. It is not based on personal knowledge.

"*Q.* What do you say as to whether or not that opinion is of a positive nature so that it would take evidence to remove it from your mind?

"*A.* Not necessarily.

"*Q.* Well, would it at all?

"*A.* I don't know. I could sit here and listen to the case; I could set the opinion aside while the case was being tried and forget about it.

"*Q.* Is that opinion sufficient so that it amounts to a settled conviction?

"*A.* Not necessarily. I did not read about the sentence in the former case nor the statement of the judge at the time the sentence was passed.

"*Q.* The opinion you had is just an impression you instinctively gained as you read about it in the paper and hearing people discuss it?

"*A.* Exactly. I did not hear much of it.

"*Q.* Have you any clear recollection in your mind what you read about the case?

"*A.* All I could remember is about the time of the arrest?

"*Q.* Have you any clear recollection in your mind what people said about the case?

"*A.* I heard the remark said that this man—

"*Mr. Lynch:* We object to that.

"*Mr. Gillespie:* That would not be proper.

"*Q.* As far as you can recall now, have you in your mind any present recollection of the facts upon which you based that opinion?

"*A.* No.

"*Q.* You could not go back now and recall what you heard about the case a year ago?

"*A.* No.

"*Q.* Now, do you honestly and conscientiously believe you could hear the testimony in this case as an impartial juror and give an impartial verdict without reference to any previous impression or opinion that you have formed?

"*A.* Yes, sir.

"*Q.* You believe you could lay aside that impression and decide the case solely upon the evidence given in open court here?

"*A.* Yes, sir.

"*Q.* And is that impression that you formed such as might tend to embarrass you or prevent you in giving the respondent the presumption of innocence in his favor throughout the trial?

"*A.* Not a particle.

"*Q.* Would you feel that you could enter upon the trial of this case with your mind open, bearing in mind that under the law that the respondent is presumed to be innocent until his guilt has been established beyond a reasonable doubt, and give him a fair and impartial trial based solely upon the law and the evidence given in open court?

"*A.* Yes, sir.

"*Q.* Do you know of any reason at all why you could not sit here as a juror and render a fair and impartial verdict based on the law and the evidence?

"*A.* No, sir."

Finally, and apparently a short time before the jury were sworn, he was asked by the trial judge:

"*The Court:* Mr. Stenton, in reply to Mr. McGee's question last night, I think you said you did form some opinion with reference to the merits of the case?

"*A.* Yes, sir.

"Q. Based on what you heard and read?

"A. Yes, sir.

"Q. And was that opinion of such a fixed nature that it would require some evidence to remove?

"A. I don't think I said that, your honor.

"Q. Well, that's what I want to ascertain. You do not think you have any fixed opinion, then, at the present time?

"A. No, sir, no fixed opinion.

"Q. Have you an opinion at all that would require evidence to remove?

"A. No, sir.

"Q. You feel you could enter upon the case then without any bias whatever?

"A. I do.

"Q. And freely so as though you had never heard of the case?

"A. Yes, sir. I could give the respondent the presumption of innocence and decide this case according to the law and evidence given here in open court.

"The Court: You have not heard anything that purported to have been the trial court's remarks in the trial of the case in any way?

"A. No, sir."

The nature of the opinion which a juror must have formed regarding the guilt or innocence of a person charged with crime in order to disqualify him for service has been so many times considered and discussed by this court that we feel we can add nothing thereto of benefit to the profession or the trial courts. The questions and answers are never the same in any two cases. If, however, the examination of the juror set out at considerable length in the opinion in People v. Quimby, 134 Mich. 625, be compared with those of the two jurors quoted above, a striking similarity will be observed. While the juror in that case said that he had an opinion "fixed and abiding" in his mind, which it would require evidence to remove, yet, it not appearing that such opinion had been formed on information of such a reliable source as would cause

settled conviction of mind and the juror having said that it would in no way prevent him from according to the defendant the presumption of innocence to which he was entitled or affect his judgment in determining defendant's guilt or innocence, it was held that the challenge for cause was properly overruled. We have no inclination to overrule this decision as in our opinion the conclusion reached was justified on the record presented.

As was said in *People* v. *Barker*, 60 Mich. 277:

"The sources of information are important in determining the effect likely to have been produced upon the mind of the juror, and the influence likely to be exerted upon his judgment."

In this day and age when the daily newspaper may be found in almost every home, owing to the free delivery of the mail in the cities and rural communities, and the people so frequently gather in churches, community work, school entertainments, meetings of the grange and gleaner organizations and other societies, there are few persons summoned for jury duty who have not read or heard more or less concerning the serious crimes alleged to have been committed in the county in which they reside. From the information thus acquired it is but natural that an impression, more or less fixed in its character, and usually called an opinion, should be formed concerning the matter read or talked about. A juror may in answer to a leading question say that it is "a fixed opinion, one such as will require evidence to remove," but if it appears that such opinion is founded on neighborhood talk or newspaper reports, or both, it is a reflection upon the man's intelligence and integrity to find that, notwithstanding such opinion, he will not be able to base his verdict solely on the proofs submitted and the law as given him by the court, if he swears that he

can and will do so.    As was said in *Holt* v. *People*, 13 Mich. 224:

"To require that jurors shall come to the investigation of criminal charges with minds entirely unimpressed by what they may have heard in regard to them, or entirely without information concerning them, would be, in many cases, to exclude every man from the panel who was fit to sit there."

None of the persons so challenged had any personal knowledge of the facts alleged.    Neither had they talked with persons who claimed to have such knowledge.    The opinions formed were based on newspaper reports and conversation with persons who had heard about the case.    As has been said, we cannot hope to lay down any more helpful rule than has been heretofore stated by this court.    We can but add that the trial court sees the juror, hears his answers and is thus able to apply those tests which occur to us instinctively, when listening to testimony, as to the frankness, fairness and credibility of the person testifying.    He is thus possessed of an advantage superior to that we may obtain from the printed record.    The discretion exercised by him in determining whether or not a juror is disqualified should not be interfered with by us unless it is apparent that the constitutional rights of the defendant have been invaded.

The decisions of this court referred to and quoted from are, we believe, in harmony with the weight of authority in the several State and Federal courts. In a note to *Scribner* v. *State*, reported in 35 L. R. A. (N. S.) 985 (3 Okla. Crim. Rep. 601, 108 Pac. 422), many cases are reviewed.    To it we invite attention. We content ourselves with a particular reference to a few of the decisions of the Supreme Court of the United States.

In *Spies* v. *Illinois*, 123 U. S. 131 (8 Sup. Ct. 22),

a case of national interest arising out of the Haymarket riot in Chicago, the examination of several of the jurors is set forth at considerable length.   The juror Denker stated that he had formed and expressed an opinion.   In answer to the question:   "Is that opinion such as to prevent you from rendering an impartial verdict in the case, sitting as a juror, under the testimony and the law?" he answered, "I think it is."   On being questioned by the prosecutor, he said:

"Q. If you were taken and sworn as a juror in the case, can't you determine the innocence or the guilt of the defendants upon the proof that is presented to you here in court, regardless of your having any prejudice or opinion?
"A. I think I could."

In answer to the following question by the court:

"Can you fairly and impartially try the case and render an impartial verdict upon the evidence as it may be presented here and the instructions of the court?"

he replied, "Yes; I think I could."   The challenge for cause was thereupon overruled.   He was afterwards examined at length by one of defendants' counsel.   It appeared that he had no personal knowledge of the facts and that he had formed his opinion from what he had heard and read in the newspapers.   It was held that the challenge was properly overruled.

In *Reynolds* v. *United States,* 98 U. S. 145, the duty of an appellate court in the premises was discussed at length.   Speaking through Chief Justice Waite, the court said:

"It is clear, therefore, that upon the trial of the issue of fact raised by a challenge for such cause the court will practically be called upon to determine whether the nature and strength of the opinion formed are such as in law necessarily to raise the presumption of partiality.   The question thus presented is one of mixed law and fact, and to be tried,

as far as the facts are concerned, like any other issue of that character, upon the evidence. The finding of the trial court upon that issue ought not to be set aside by a reviewing court, unless the error is manifest. No less stringent rules should be applied by the reviewing court in such a case than those which govern in the consideration of motions for new trial because the verdict is against the evidence. It must be made clearly to appear that upon the evidence the court ought to have found the juror had formed such an opinion that he could not in law be deemed impartial. The case must be one in which it is manifest the law left nothing to the 'conscience or discretion' of the court.   *   *   *

"In considering such questions in a reviewing court, we ought not to be unmindful of the fact we have so often observed in our experience, that jurors not unfrequently seek to excuse themselves on the ground of having formed an opinion, when, on examination, it turns out that no real disqualification exists. In such cases the manner of the juror while testifying is oftentimes more indicative of the real character of his opinion than his words. That is seen below, but cannot always be spread upon the record. Care should, therefore, be taken in the reviewing court not to reverse the ruling below upon such a question of fact, except in a clear case."

See, also, *Hopt* v. *Utah*, 120 U. S. 430 (7 Sup. Ct. 614) ; *Holt* v. *United States*, 218 U. S. 245 (31 Sup. Ct. 2).

We conclude the discussion of this question with the following from 24 Cyc. p. 298, quoted approvingly in *People* v. *Swift*, 172 Mich. at page 480:

"Newspaper reports are ordinarily regarded as too unreliable to influence a fair-minded man when called upon to pass upon the merits of a case in the light of evidence given under oath; and it is now a well-settled rule that a juror, although he may have formed an opinion from reading such reports, is competent if he states that he is without prejudice and can try the case impartially according to the evidence, and the court is satisfied that he will do so."

We feel constrained to hold that no error was committed in overruling the several challenges for cause.

2. Change of Venue. After several days had been spent in selecting a jury, defendant's counsel moved for a change of venue. The only reason assigned therefor was "because a fair and impartial jury cannot be secured in Oakland county." As we have concluded that a fair and impartial jury was secured, it is unnecessary to discuss the assignment of error based on the court's denial of such motion. The question presented is not similar to that in *People* v. *Swift,* 172 Mich. 473, and *People* v. *Gage,* 188 Mich. 635, in both of which the claim was made that the defendant could not obtain a fair and impartial trial in the county in which the venue was laid.

3. Error is assigned on the refusal to permit defendant's counsel to cross-examine the complaining witness "as to her whereabouts and mode of life a short time previous to July 6th, the date complained of in the information." It was not permissible to prove that the complaining witness, she being then under 16 years of age, had been theretofore unchaste, but this court has quite recently held that, "subject always to the proper discretion of the court," such an examination may be had for the purpose of affecting her credibility even though her answers may reveal a lack of chastity on her part. *People* v. *Cutler,* 197 Mich. 6. In that case, the authorities are reviewed and discussed at length by Mr. Justice BIRD, and the rule announced must be considered as the settled law of this State on the subject. From a reading of the entire record, we are satisfied that the jury were fully informed as to the character and habits of the complainant. She herself admitted, as hereinafter stated, that she and Grace Strong had spent the Wednesday night following with two men at a

hotel in Detroit. We think it may well be said that the restriction of the examination complained of was not such an abuse of discretion on the part of the trial judge as should call for reversal, and that, in view of the entire record, the ruling was without prejudice to the rights of the defendant.

Counsel contend that error was committed—

"in permitting the witnesses Grace Strong and Virginia Stockwell to testify as to the acts and happenings subsequent to the date alleged in the information" (Sunday, July 6th).

On the redirect-examination of Grace Strong she was permitted, over objection of defendant's counsel, to testify that she and Virginia remained in the Garner apartments until the following Saturday. No questions were asked her as to any occurrence during that time. On the recross-examination, defendant's counsel examined the witness fully as to what occurred during that week, eliciting the fact that the two girls spent one night at a hotel in Detroit with two other men and a denial that any subsequent act of intercourse took place between the defendant and Virginia during that time. In view of this cross-examination, the court permitted Virginia to be recalled and to state, in substance, what occurred during that week. There is no question about the rule of evidence that while acts of intimacy prior to the date charged may be shown, such acts subsequent thereto may not be. *People* v. *Davis*, 175 Mich. 594, and cases cited. The prosecuting attorney did not ask any question about a subsequent act, nor do we think the jury would necessarily draw such an inference from the fact that the girls remained several days at the defendant's apartment. The particulars were brought out on further cross-examination of counsel for the defendant. In view of the fact that both girls denied that any subsequent act of intercourse took place, we do

not think such testimony so prejudicial as to necessitate a reversal of this case.

The errors assigned on the charge of the court and the denial of a motion for a new trial are not discussed in the brief of counsel. We have, however, examined the record with such assignments in mind and find no reversible error disclosed therein.

The judgment is affirmed.

STEERE, C. J., and STONE and CLARK, JJ., concurred with SHARPE, J.

BIRD, J. I am at variance with the conclusions reached by Mr. Justice SHARPE in this case because I am convinced that defendant did not have what is guaranteed to him in the Michigan Constitution, namely, "an impartial jury." (Article 2, § 19.) The trial court has the common-law right to determine the qualifications of a juror, but in doing so the constitutional provision should be observed. As an aid in determining the qualifications of a juror the trial court has the following legislative provision:

"That the previous formation or expression of opinion or impression, not positive in its character, in reference to the circumstances upon which any criminal prosecution is based, or in reference to the guilt or innocence of the prisoner, or a present opinion or impression in reference thereto, such opinion or impression not being positive in its character, or not being based on personal knowledge of the facts in the case, shall not be a sufficient ground of challenge for principal cause, to any person who is otherwise legally qualified to serve as a juror upon the trial of such action: *Provided,* The person proposed as a juror who may have formed or expressed, or has such opinion or impression as aforesaid, shall declare on oath, that he verily believes that he can render an impartial verdict according to the evidence submitted to the jury on such trial: *Provided further,* The court shall be satisfied that the person so proposed as a juror does not entertain such a present opinion as

would influence his verdict as a juror." 3 Comp. Laws 1915, § 15820.

Under these provisions, if the proffered juror has an opinion or impression he is not thereby disqualified unless the opinion or impression is positive in its character, or unless it is based in whole or in part on personal knowledge of the facts. If the opinion or impression is of a positive character or is based in whole or in part upon personal knowledge of the facts, then the proffered juror is disqualified and should be rejected. It is difficult to prescribe any rule which will serve as a test in determining the qualification of jurors in all cases. Each case rests upon its own particular facts and circumstances. Much is therefore confided to the good sense and discretion of the trial court. This court has dealt with these questions in several cases, but only in one of them is there any rule promulgated. This rule is general in character and is not very helpful. It provides that:

"The opinion entertained by a juror which disqualifies him is an opinion of that fixed character which repels the presumption of innocence in a criminal case, and in whose mind the accused stands condemned already." *People* v. *Barker*, 60 Mich. 277 (1 Am. St. Rep. 501).

In reaching the conclusion which he did in the present case Mr. Justice SHARPE was much influenced by the case of *People* v. *Quimby*, 134 Mich. 625, where the examination of the juror was very similar to the present one. There is an important difference between the *Quimby Case* and the present one which I think Mr. Justice SHARPE has overlooked. While the examination in the *Quimby Case* is very similar to the present one, the circumstances surrounding them were widely variant. The *Quimby Case* is an extreme case. It was so recognized by the writer of the

opinion, as he states in the opinion that it is a border
line case.　Were the surrounding circumstances, how-
ever, in the present case the same as those in the
*Quimby Case,* I should be in favor of affirming it.
The difference between the cases lies in this:　The
*Quimby Case* was the first trial of the case.　The
question here arose on a second trial.　What the
public had read in the newspaper before the *Quimby
Case* was tried were items of street gossip, rumors
and the respective claims of the parties, as is usual
in criminal cases.　In the present case the public had
read the court proceedings of the first trial and also
the testimony which was printed in the Pontiac Press-
Gazette and other papers.　It had read the excoria-
tion which the trial court administered to defendant
in pronouncing sentence.　Every one of the six jurors
complained of testified he had read more or less of
the court proceedings.　Juror Harbison testified that he
had read all the paper had printed from the beginning
to the end of it.　If Harbison would have been dis-
qualified had he talked with the witnesses before the
trial, would he not be disqualified by reading their
sworn testimony?　In either way he would be getting
his information from one who had personal knowledge
of the facts.　Had this feature been added to the ob-
jections in the *Quimby Case,* it is not to be supposed
that that case would have been decided the way it was.
This distinction is an important one and one which
has been recognized and acted upon by the courts.
It is said in 24 Cyc. p. 301:

"A juror is not incompetent merely because he has
heard the evidence at a former trial, if he has formed
no opinion therefrom as to the merits of the case or
the guilt or innocence of defendant; but he is in-
competent if he has formed such an opinion from
hearing or reading such evidence, and this notwith-
standing the juror states that he can disregard the

opinion so formed and render a fair and impartial verdict."

The question has been discussed in the cases of *Laidlaw* v. *Sage,* 2 App. Div. 374 (37 N. Y. Supp. 770) ; *Staup* v. *Commonwealth,* 74 Pa. St. 458; *Greenfield* v. *People,* 74 N. Y. 277; *People* v. *Thacker,* 108 Mich. 652.

In *Greenfield* v. *People, supra,* the proposed juror testified that he had read in a newspaper the account of the evidence for the prosecution upon a former trial of the prisoner under the same indictment, whereon the jury had failed to agree, and had heard others talk about the trial a good deal; that he had never expressed an opinion, but had an impression, from what he had heard and read, which led him to that opinion as to the prisoner's guilt, so that at the time he had an impression, opinion or belief which would take evidence to remove; that he believed he could render a fair and impartial verdict upon the evidence, meaning by that that he would endeavor to weigh the evidence impartially and render a verdict accordingly; that he would enter upon the discharge of his duties as juryman with an impression as to the guilt of the prisoner, which it would take evidence to remove, but he thought his previously formed opinion or impression would not bias or influence his verdict at all, and that he could decide the case fairly, etc.   In the trial court the challenge was overruled but the court of appeals held this was error and reversed the case.   In doing so, it was said in part:

"We are of the mind, that one who has formed an opinion or impression from the reading  or  report, partial or complete, of the criminatory testimony, against a prisoner on a former trial, however strong his belief and purpose that he will decide the case on the evidence to be adduced before him as a juror and will give an impartial verdict thereon unbiased and uninfluenced by that impression cannot be readi-

ly received as a juror indifferent towards the prisoner and wholly uncommitted. We have already given the views of judges upon this matter. How can it be determined or assumed, that the mind, which has already yielded to the force of facts presented to it through the medium of sworn witnesses, and has formed an opinion thereon, will, on a second hearing of the same facts through a like medium, come to a different conclusion, or even so far command itself as to calmly and judicially weigh them again in the balance of a fresh and unbiased judgment? Can that mind be unbiased in the second pondering of the same testimony, which has already caused it to preponderate and settle to or towards a conclusion? We think not. Therefore, we are of the opinion that the challenge to the favor should have been sustained."

It might be well to note in connection with this case that New York has the statute heretofore quoted. Ours was probably taken from it.

In *Staup* v. *Commonwealth, supra,* the proposed juror answered to the questions put to him that he had formed and expressed an opinion as to the guilt or innocence of the prisoner; that he read evidence of a former trial and that he still entertained that opinion which it would take some evidence to remove. He further stated that this opinion would not bias or influence his judgment if he were sworn as a juror. This opinion was formed from reading evidence of a former trial. The challenge was overruled. The supreme court, in reversing the case, said in part:

"Whenever, therefore, the opinion of the juror has been formed upon the evidence given in the trial at a former time, or has been so deliberately entertained that it has become a fixed belief of the prisoner's guilt, it would be wrong to receive him. In such a case the bias must be too strong to be easily shaken off, and the prisoner ought not to be subjected to the chance of conviction it necessarily begets."

In *People* v. *Thacker, supra,* a proposed juror had talked with a juror who served on the coroner's jury and received from him his understanding of the facts. The challenge was overruled and this court held it error.

We then have at least four jurors who had built up an opinion on what they had heard and read in the papers. One juror said his opinion was based upon what he had read and what he had heard from those who attended the trial. Four admitted that they had opinions as to the guilt or innocence of defendant, and they testified their opinions were such that it would take evidence to remove them. Juror Stenton testified as follows:

"*Q.* In other words, your opinion is definite?
"*A.* All set. Yes.
"*Q.* And of a positive nature which would require some evidence to change it?
"*A.* Yes, sir."

It can hardly be supposed that the legislature of 1873, which enacted section 15820, contemplated that when a proposed juror admitted that his opinion was definite and "all set," and of a positive nature which would take evidence to change, he would be qualified to sit as a juror under this statutory provision. Furthermore, I am unwilling to believe that a panel made up in whole or in part of jurors of this character is the quality of "impartiality" which was in the minds of the framers of the Constitution when they framed the provision guaranteeing to every person an "impartial jury."

But it is said these jurors modified their statements and concluded that they would, or would try, to lay aside their opinions and decide fairly between the people and the prisoner. There is no doubt but the honest juror would attempt to do this, and if it were a slight impression or opinion he might be able to

do it, but we all know how difficult it is to wear away an opinion where it is definite and "all set." A juror whose mind is in that state would involuntarily take all the evidence which tended to support his previous opinion at its face value, while evidence which ran contrary to it would either be rejected or accepted with a misgiving. The ability of a juror to get away from his previously formed opinions is well commented upon by Mr. Justice COOLEY in *Stephens* v. *People*, 38 Mich. 739:

"The question on this record is, whether that jury can be an impartial one whose members are already so impressed with the guilt of the accused that evidence would be required to overcome such impressions. It seems to us that this question needs only to be stated; it calls for no discussion. This woman instead of entering upon her trial supported by a presumption of innocence, was in the minds of the jury when they were impaneled condemned already; and by their own statements under oath it is manifest that this condemnation would stand against her until removed by evidence. Under such circumstances it is idle to inquire of jurors whether or not they can return just and impartial verdicts; the more clear and positive were their previous impressions of guilt the more certain may they be that they can act impartially in condemning the guilty party. They go into the jury box in a state of mind that is well calculated to give a color of guilt to all the evidence; and if the accused escapes conviction, it will not be because the evidence has established guilt beyond a reasonable doubt, but because an accused party, condemned in advance, and called upon to exculpate himself before a prejudiced tribunal, has succeeded in doing so. It is clear to our minds that this woman has not had an impartial jury trial, and the judgment must be reversed, and the cause remanded."

This is an important question to the prisoner at the bar and is important to every man and woman in Michigan who may be called upon at some time to answer to a criminal charge, and a rule ought not to be fixed

by this court which will endanger in the future their constitutional rights. I think there were at least four disqualified jurors who sat in the case and for this reason the judgment of conviction should be set aside and a new trial ordered.

MOORE, WIEST, and FELLOWS, JJ., concurred with BIRD, J.